164 P.2d 584

**VENEGAS v. LUBY.**

No. 4900.

Supreme Court of New Mexico.
Dec. 22, 1945.

William T. O'Sullivan, of Albuquerque, for appellant.

Allen M. Tonkin and Harold O. Waggoner, both of Albuquerque, for appellee.

SADLER, Justice.

The defendant below, Luby, seeks by review on appeal to reverse a decree of the trial court denying the existence of an easement for irrigation purposes on a certain tract of plaintiff's land for the benefit of defendant's land adjoining it on the west and enjoining the latter from maintaining irrigation ditches across the plaintiff's land. In this suit one Charles A. Keeling and wife, Reba W. Keeling, also were joined as defendants but unless otherwise indicated any reference to a party as defendant hereinafter will intend Luby only.

The defendant as appellant in this Court devotes most of his argument to the claim that the trial Court erred in denying his motion to set aside the decree entered and grant his written request to make specific findings of fact and conclusions of law, claiming the decree was entered without notice to him. The plaintiff defends the trial Court's action at considerable length, but being uncertain what view this Court will take of the matter, each party enters into a discussion of the merits. It seems that following close of the trial, the Court dictated to the court reporter certain tentative findings of fact and conclusions of law which within a few days were transcribed and a copy furnished counsel for each side. The Court viewed the premises involved in the presence of counsel for each side on the same day the tentative findings were dictated. These findings were not filed so as to become a part of the record proper and the decree itself contains only two general findings.

Accounts of what transpired between the Court and counsel following making of the tentative findings and a view of the premises vary widely as related by counsel and it would be difficult to reconcile their divergent recollections of events. Happily, we are spared the necessity of doing so by a stipulation in open Court at oral argument of this appeal to the effect that the tentative findings which, according to plaintiff's counsel, after a view of the premises the Court announced would be final, may be taken and treated as the findings of the Court for purposes of this appeal.

The two tracts of land mentioned in the foregoing paragraph were both originally parts of what is known as the Menaul farm consisting of a single tract and operated by the Menaul family as a unit. It was subsequently divided into five contiguous portions, as follows:

Tract 1–A, situated at the westerly end of the farm and consisting of ten acres, now owned by the defendant;

Tract 1–B–1, adjoining Tract 1–A on the east and consisting of four acres, now owned by the defendant;

Tract 1–B–2–A–1, adjoining Tract 1–B–1 on the east and consisting of one acre, now owned by the defendant;

Tract 1–B–2–A–2, adjoining Tract 1–B–2–A–1 on the east and consisting of five and one-quarter acres, now in the process of being purchased under installment-contract by the plaintiff from defendant Keeling;

Tract 2, situated east of the irrigation ditch on the easterly side of plaintiff's land, now retained as the Menaul homestead and in which we have no interest in this action whatever.

The present controversy involves primarily the two tracts designated above as "Tract 1–B–2–A–1" and "Tract 1–B–2–A–2", the former owned by the defendant and the latter in the course of purchase by the plaintiff. All of the foregoing tracts except Tract 2 are so designated on a plat prepared by Engineer Edmund Ross and used in evidence at the trial. The descrip-

tion of the several tracts hereinabove locates Tract 2 with reference to all of the other tracts.

The two tracts, 1–B–2–A–1 and 1–B–2–A–2, are portions of what was originally a single orchard. The east side of the latter tract owned by the plaintiff is bordered by a large lateral ditch supplying water from which two smaller ditches run in a westerly direction—one along the northerly side of the orchard and the other along its southerly side. The large lateral has been in existence and in its present location since 1879 and the two smaller ditches supplied by it and running westerly along the north and south sides of the orchard have afforded irrigation to the orchard from some date prior to 1916. They have always been used for such purpose and were so being used at the time of the trial.

The defendant purchased the ten-acre tract, described on the plat as 1–A, from William and Edith Menaul on February 20, 1940, the grantors at the time retaining the entire balance of the property. Later in the same year and on November 14, 1940, the defendant purchased from the same grantors the four-acre tract described on the plat as 1–B–1, the grantors again retaining the entire balance of the property, consisting now, however, apart from the homestead, only of tracts 1–B–2–A–1 and 1–B–2–A–2—the orchard.

Thereafter and on August 2, 1941, William and Edith Menaul transferred the homestead and the orchard to their daughters, Rebecca Jane and Mary Elizabeth Menaul, following which the two daughters entered into a contract with the defendant, Keeling, for the purchase by him of the two tracts composing the orchard—, 1–B–2–A–1 and 1–B–2–A–2. The Keeling's contract as to Tract 1–B–2–A–1 was subsequently assigned to the defendant, Luby, who took title thereto from Rebecca Jane and Mary Elizabeth Menaul on December 7, 1942. Rounding out the transfers and placing the parties in the positions occupied at the time this controversy arose, the plaintiff's contract of September 15, 1943, with the Keelings for the purchase of Tract 1–B–2–A–2, is here mentioned.

The findings and conclusions of the trial judge which, under the stipulation of counsel, are to govern us in passing upon this appeal, read as follows:

"I am going to make tentative ruling and statement of findings of fact and conclusions of law at this time which will be subject to change after a view of the property, or if there is any authority I run into which would change my opinion as to the law on this case.

"So far as the facts are concerned, we have four pieces of property more or less immediately connected with this case here known as Tract 1$B$(A),1B1, 1B2A1 and 1B2A2. All this land at one time was under the supervision and domination of the Menaul family. At the time they owned the entire acreage there was a lateral ditch containing a substantial flow of water directly adjacent to the east side of Tract

1B2A2 and a lateral between Tracts 1B and 1B1, which wasn't as large a lateral as the one on the east, heretofore referred to, which the testimony here shows is capable of irrigating from thirty to forty acres of land. That at the time the Menauls owned this entire acreage there was a small lateral running from the north and south lateral on the east which ran from the east lateral to somewhere in Tract 1B2A1 and there was a small furrow on the outside of Tract 1B2A2 which was occasionally used for irrigation. purposes. That the Menauls first conveyed Tract 1B consisting of approximately ten acres to defendant, W. J. Luby. At that time there was no consideration of water rights, it apparently being conceded that Tract 1B could be adequately irrigated from the north and south lateral between Tracts 1B and 1B1.

"At a later date in November, 1940 the Menauls conveyed Tract 1B1 of approximately four acres to W. J. Luby and at this time a separate memorandum of agreement provided that defendant Luby could use water from the ditch on the east half if it wasn't possible for him to obtain water from the west.

"Subsequent to this time W. J. Luby purchased Tract 1B2A1 from the Menauls through Mr. Keeling who had a real estate contract to buy this tract.

"Subsequent thereto Mrs. A. Venegas entered into a real estate contract with Mr. Keeling for the purchase of Tract 1B2A2. That at the time Mrs. A. Venegas executed a real estate contract and entered into the contract with Mr. Keeling she had actual or constructive knowledge of the agreement between the Menauls and Luby because of the fact it was called to her attention by her attorney at that time.

"The Court would find as a matter of fact that under the evidence that has been presented here it is possible to irrigate Tracts 1B1 and 1B2A1 from the north and south lateral between Tracts 1B and 1B1. The Court concludes as a matter of law, as far as any memorandum of agreement is concerned touching upon Tract 1B1 that while the word, 'possible' is used, it does not mean the Defendant W. J. Luby would have to do rugged and monumental work to get water upon his land, but it does mean he cannot use the small lateral on Mrs. Venegas's land merely because it is more convenient as long as it is possible to irrigate said Tracts from the north and south lateral between 1B and 1B1 by exercising ordinary labor and efforts in building ditches and even if necessary leveling a small part of the land, such as is ordinarily done in this valley by other land owners in irrigating, and under the terms of this agreement it is his duty and obligation to do so.

"And it is a further conclusion of law that the same reasoning would apply to any right of assuming by implication or necessity that this property having at one time all been owned by the Menauls even if they had ditches running all over the place, the party they sold to would not have an implied assumption on certain ditches that

might end on the part that was sold and a right forever to go across the property if it was shown the property received would have adequate water for irrigating purposes which could be used for irrigating purposes by the ordinary and reasonable methods and reasonable expense of construction.

"An easement by implication or necessity would not arise because it would be more convenient for him to make use of work that had been done by the original owner."

We think the findings so made by the trial judge and which he declined to change after a view of the premises, unquestionably represent the facts upon which he based his decision. We deem them sufficient under the stipulation to enable us to review the decree appealed from and may as well now announce that a consideration of the briefs and oral arguments convinces us the trial court rendered a proper decision upon the facts found which we hold are supported by substantial evidence.

It seems well settled from decisions and authority cited in the briefs of defendant, who himself sought affirmative relief, that if the owner of land subjects one part of it to a visible servitude in favor of another and then conveys away the dominant portion while it is enjoying the servitude of the portion retained, and the use is reasonably necessary for the full enjoyment of the part granted, an implied easement arises in favor of the premises conveyed and passes by the conveyance without mention.

17 Am.Jur. 945, § 33 in topic "Easements"; Gale & Whatley on Easements, 40; 3 Farnham, Waters and Water Rights, p. 2444, § 831; Schumacher v. Brand, 72 Wash. 543, 130 P. 1145; Tucker v. Nuding, 92 Or. 319, 180 P. 903; Ferrell v. Durham Bank & Trust Co., 221 N.C. 432, 20 S.E.2d 329.

In 3, Farnham, Waters and Water Rights, at page 2444, the author states the doctrine as follows: "If the owner of land has artificially created upon his property a condition which is favorable to one portion of his property, and then sells that portion, the grantee will take it with the right to have the favorable condition continued."

In 17 American Jurisprudence, 945, the author of the text states: "It is a well-settled rule that where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude, at the time of the severance, is in use and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right to continue such use arises by implication of law."

In the case at bar, the defendant relies upon this well-settled doctrine as giving him an easement for the four-acre tract described as Tract 1B1 and the one-acre tract described as 1B2A1 for the carriage of irrigation water in the north and south ditches mentioned over and across plaintiff's five and one-fourth acre tract described as Tract 1B2A2 from the lateral ad-

joining the latter tract on the east. The weakness in the defendant's position lies in his failure to establish the implied easement claimed as "reasonably necessary for the fair enjoyment" of the two tracts in question. In the very next section following the text quoted above from 17 American Jurisprudence, the author of the text goes on to enumerate in § 34 at page 948, the elements essential to create such an easement by implication in the following language, to wit: "Various elements are essential to create an easement by implication upon the severance of the unity of ownership in an estate. They are: (1) A separation of the title; (2) necessity that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; and (3) necessity that the easement be essential to the beneficial enjoyment of the land granted or retained."

Further on in the same text (17 Am.Jur. 953, § 43), the author goes on to state: "As a general rule, if an existing servitude or quasi easement can be made the basis for the implication of an easement on the severance of certain property, it is essential that such easement be necessary, and not merely convenient, to the beneficial enjoyment of the dominant portion of the property. Moreover, the necessity at the time of the conveyance governs."

Since under the general doctrine of implied easements, the existence of an obvious servitude or quasi easement is pre-supposed, the rule is not to be confused with the specific principle under which an ordinary way of necessity arises. 17 Am. Jur. 947, note 4. The two are not the same, although the factor of necessity enters into each. They are treated separately by text-writers and annotators. See 58 A.L.R. 824; 17 Am.Jur. 945, § 33 and Id., § 48, under Easements. See also 34 A.L.R. 233, 100 A.L.R. 1321. In the latter annotation on page 1322, the annotator recognizes the distinction in the following language, to wit: "While the general question as to what constitutes ways of necessity by implication is not included in this annotation, the subject of necessity arises to some extent in a consideration of visible or apparent easements of way."

The meaning of "necessary" when related to the kind of implied easement here involved does not mean an "absolute necessity". It is "to be understood as meaning that there could be no other reasonable mode of enjoying the dominant tenement without the easement." Starrett v. Baudler, 181 Iowa 965, 165 N.W. 216, 220, L.R.A.1918B, 528. See also 17 Am. Jur. 954, § 44, "Easements"; Holtz Amusement Co. v. Schorr, 122 Misc. 712, 204 N.Y.S. 733; Burling v. Leiter, 272 Mich. 448, 262 N.W. 388, 100 A.L.R. 1312; Ogden v. Jones, Tex.Civ.App., 37 S.W.2d 777; Miller v. Skaggs, 79 W.Va. 645, 91 S.E. 536, Ann.Cas.1918D, 929 and Case Note; Annotation in 34 A.L.R. 233 (240), 100 A.L.R. 1321 (1325). In Holtz Amusement Co. v. Schorr, supra, the court mentions several considerations which argue weightily in favor of the plaintiff's position

in the case at bar. The court said [122 Misc. 712, 204 N.Y.S. 734]: "The basis for an easement by implication must be reasonable necessity, as distinguished from mere convenience, the English rule of absolute necessity being in this state modified. Wells v. Garbutt, 132 N.Y. 430, 30 N.E. 978; Paine v. Chandler, 134 N.Y. 385, 389 [32 N.E. 18, 19 L.R.A. 99]; Spencer v. Kilmer, 151 N.Y. 390, 398, 45 N.E. 865. In the instant case there is no mention of appurtenances. On the contrary, what is granted is clearly defined by metes and bounds, which do not include any of the defendant's property, and in intent further limited by other portions of the lease, which expressly define whatever servitudes the 30-foot lot would be under. * * * When to this precise measure there is added the consideration that the continued use of the 30-foot lot, while doubtless a great convenience to the plaintiff, could be replaced by exits on the other side or wall of the theater, and the defendant has offered both before and during the trial to bear the cost thereof, and that 'the tendency of the courts is to discourage implied grants of easements, since the obvious result, especially in urban communities, is to fetter estates and retard building and improvements, and is in violation of the policy of the recording acts' (9 R.C.L. 754), there remains no room for doubt that the plaintiff has not made a case for relief." .

While in the foregoing case the defendant offered to bear the cost of the changes involved, a matter about which there is no proof here, it seems obvious this was not a controlling consideration in the court's mind.

As to the four-acre tract (1B1) purchased by defendant from the Menauls, simultaneously and coincident with the conveyance thereof, a separate memorandum of agreement was entered into with grantors, under the terms of which any implied easement of the kind claimed, if otherwise arising, is rejected by language expressly granting the use of water from the east therefor only in the event "it wasn't possible for him (defendant) to obtain water from the west." The trial court and very properly, we think, held the word "possible" was not used in its literal sense but had only the following meaning, to wit: "The Court concludes as a matter of law, as far as any memorandum of agreement is concerned touching upon Tract 1B1 that while the word 'possible' is used, it does not mean the Defendant W. J. Luby would have to do rugged and monumental work to get water upon his land, but it does mean he cannot use the small lateral on Mrs. Venegas's land merely because it is more convenient as long as it is possible to irrigate said Tracts from the north and south lateral between 1B and 1B1 by exercising ordinary labor and efforts in building ditches and even if necessary leveling a small part of the land, such as is ordinarily done in this valley by other land owners in irrigating, and under the terms of this agreement it is his duty and obligation to do so."

Thus it is that by defendant's express agreement he is barred of the right claimed

in the plaintiff's land for the four acres, if by giving the time and effort leveling and constructing laterals customarily expended by other landowners who engage locally in irrigation farming, he can irrigate the same. And we may as well add right here that the test of "necessity" approved by text and decision in relation to implied easements of the kind involved, laying aside consideration of the specific agreement as to the four acres, would bar the defendant of the right claimed both as to the four and the one-acre tract under the findings of the trial court. Such was the view correctly entertained by the trial court when, following the language last quoted from its tentative findings, it said: "And it is a further conclusion of law that the same reasoning would apply to any right of assuming by implication or necessity that this property having at one time all been owned by the Menauls even if they had ditches running all over the place, the party they sold to would not have an implied assumption on certain ditches that might end on the part that was sold and a right forever to go across the property if it was shown the property received would have adequate water for irrigating purposes which could be used for irrigating purposes by the ordinary and reasonable methods and reasonable expense of construction."

This leaves open to the defendant only the challenge to the sufficiency of the evidence to sustain the trial court's findings in this connection. We already have indicated our view that it affords substantial support therefor. Indeed, the testimony of Engineer Ross and that of the defendant himself is of such character that the trial court might have found either way on the issue and have substantial support for its findings. An analysis of the testimony fails to satisfy us that the evidence of defendant's ability, without undue burden, to irrigate the four and the one acre tracts through use of the west lateral passing between his ten and four acre tracts, is unsubstantial. As fact finders we might have resolved differently, although of this we are not certain, especially since as heretofore mentioned, the trial court had the advantage of a view of the premises. Naturally, we have no way of knowing what support this inspection may have given the court's appraisal of the testimony. Unquestionably, the trial court was privileged to resolve the controverted issue either way and we ought not to disturb its findings.

It follows that the judgment reviewed should be affirmed.

It is so ordered.

MABRY, C. J., and BICKLEY and LUJAN, JJ., concur.

BRICE, J., did not participate.