241 P.2d 1209

**SOUTHERN UNION GAS CO. v.
CANTRELL et al.**

No. 5400.

Supreme Court of New Mexico.

March 7, 1952.

James C. Compton, Portales, Grantham, Bratton & Spann, Albuquerque, for appellants.

Otto Smith, Clovis, Simms, Modrall, Seymour & Simms, Albuquerque, Robert M. Martin, Jr., Dallas, Tex., for appellee.

PER CURIAM.

Upon consideration the motion for rehearing is denied. However, we have concluded to withdraw our former opinion and substitute the following therefor.

LUJAN, Chief Justice.

The Southern Union Gas Company instituted this suit against Kay Cantrell and Velma G. Cantrell, his wife, to enjoin them from erecting a dwelling house over its high pressure gas line which traverses the lots of the defendants, which are located in the City of Portales, New Mexico. The case was tried to the court without a jury. It found the issues in favor of the gas company and granted an injunction as prayed. The defendants appeal. For

convenience sake the plaintiff will be referred to as the Gas Company and the Cantrells as the defendants.

The Gas Company alleged that it was the owner of a right-of-way easement for a high pressure gas pipe line across a certain tract of land now owned by the defendants. That the easement was acquired by prescription and that it has used it for its pipe line in an open, uninterrupted, peaceful, notorious, adverse manner, under a claim of right for a period in excess of ten years, with the knowledge, or imputed knowledge, of the owner of said tract or premises.

The defendants denied that title to the right-of-way easement as claimed by the Gas Company was acquired by prescription or in any other manner.

It was stipulated by the parties that the following affidavit of Mrs. Lowrey Jones, former owner of the land in question, would be accepted as true. It reads:

"That from the month of May, 1930, until June, 21, 1946, she was the owner in fee simple of a tract out of Block A of the Franklin Addition to the City of Portales, New Mexico, described as follows:

"Beginning at the Southwest corner of Said Block A; Thence North 136.6'; thence East 330'; thence South 136.6'; thence west 330' to the point of beginning; and

"That from Jan. 1930 until March, 1942, she was a resident of the town of Portales, New Mexico, and that during the early part of the year 1930 for a consideration of Twenty-Five ($25.00) she granted to Gas Company of New Mexico a perpetual right to construct and maintain a main gas transmission line diagonally across the west portion of the property above described, as shown in the plat attached hereto; and

"That at all times during her ownership of the land above described, she had actual knowledge that the said main gas transmission pipe line was so maintained and operated; and

"That such operation and maintenance was under claim of right to a right-of-way easement, and that the agents and employees of the Gas Company of New Mexico, its successors and assigns, including Southern Union Gas Company, entered upon the right of way granted for inspection of the said pipe line without further permission or request therefor."

It was also stipulated that the written grant of easement was lost and that it was never recorded in the office of the County Clerk of Roosevelt County. It was further stipulated that the pipe line in question has been in its present location continuously since the year 1930.

The lower court found:

"3. That the said Mrs. Lowrey Jones, during the early part of the year 1930, for a consideration of Twenty-Five Dollars ($25.00) by written instrument granted to the Gas Company of New Mexico a perpetual right to construct and maintain a main gas transmission line diagonally across the above described tract of land.

"4. That the said written instrument evidencing the grant by said Mrs. Lowrey Jones was lost or destroyed and was never recorded in the County Records of Roosevelt County.

"5. That Plaintiff Southern Union Gas Company has succeeded to all the rights, titles, and interests in the properties of the Gas Company of New Mexico.

"7. That the said pipe line has been maintained and operated continuously, un-interruptedly, and peaceably in its present location from the time of laying down of such pipe line in May, 1930, until the present time, and no controversy over such maintenance and operation has arisen prior to this cause.

"8. That the said Mrs. Lowrey Jones, at all times during her ownership of the above described tract of land had actual knowledge that the said pipe line was so constructed in May, 1930, and thereafter continuously maintained and operated across the said tract.

"9. That the said pipe line has been maintained and operated under a claim of right adverse to the owner of the above described tract of land at all times since the laying down of the said pipe line in May, 1930, and the agents and employees of the plaintiff, and of its predecessors in title, from time to time entered upon the above described tract of land for inspection of the said pipe line without further permission or request therefor.

"10. That the defendant Kay Cantrell purchased the above described tract of land by warranty deed dated June 21, 1946, from the said Mrs. Lowrey Jones.

"13. That defendants had actual knowledge of the location of plaintiff's main pipe line at the time of their purchase of the premises described herein."

The Court concluded as matter of Law:

"2. That the plaintiff has acquired an easement by prescription across the tract of land described in the plaintiff's amended petition.

"3. That the easement acquired by the plaintiff was not extinguished by the transfer of ownership of the tract of land to the defendants."

Errors assigned by defendants are twenty-two in number, and are argued in the briefs under designated points.

The first is that there is no substantial evidence in the record to support the

court's finding of fact that the defendants had actual knowledge of the plaintiff's pipe line at the time they purchased the premises in question.

In approaching a discussion under this point, we will, of course, view the evidence in an aspect most favorable to the judgment. Brown v. Cobb, 53 N.M. 169, 204 P.2d 264. If the finding is based on substantial evidence under the established rule of the court, it will not be disturbed by us. But a finding may not rest on mere speculation or conjecture. Petrakis v. Krasnow, 54 N.M. 39, 213 P. 2d 220. And a finding of fact, not supported by substantial evidence, will not be sustained on appeal, and a judgment based on such finding is itself without support. Manby v. Voorhees, 27 N.M. 511, 203 P. 543; Jones v. Jernigan, 29 N.M. 399, 223 P. 100; Salas v. Olmos, 47 N.M. 409, 143 P.2d 871; Bland v. Greenfield Gin Co., 48 N.M. 166, 146 P.2d 878; De Baca v. Kahn, 49 N.M. 225, 161 P.2d 630.

We have carefully examined the record and find that the court was clearly in error in making this finding. The evidence introduced in behalf of the defendants shows without contradiction that neither Mrs. Lowrey Jones nor Melton Little, her son-in-law, at the time they sold the land in question to defendants, ever informed them that there was an eight inch

high pressure line across the property. The examination of the abstract disclosed no easement. The warranty deed given them by Mrs. Lowrey Jones made no mention of the easement granted to the Gas Company in 1930. The written grant of easement was never recorded. The Gas Company failed to show that defendants ever knew that the high pressure gas line ran through their property until they were enjoined from building a house on their premises.

The testimony introduced on behalf of the Gas Company in regard to actual notice was directed to signs placed over the line outside the defendants' premises and to periodical inspection of the gas pipe line by employees of the Gas Company over defendants' land. These inspections were made prior to and subsequent to the time the land was purchased by the defendants.

Thus it appears from the testimony of J. W. Wilson, the District Manager, that the high pressure gas line is marked at various places as it comes into the City of Portales; that the signs are marked "High Pressure Gas Line;" that some have "Southern Union Gas Company" on them, and some have not; that there is such sign at a point where the line crosses First Street north and east from the Cantrell property; that there are signs on both sides of the road where the line enters Franklin Addition; that the nearest sign to the Cant-

rell property is 440 feet away on the north side; that the depth of the line which crosses the defendants' property is from eighteen to twenty-four inches; that the high pressure gas line on defendants' property is inspected periodically, at least once a year for gas leaks; that several of the Gas Company's employees went over the defendants' land while making such inspections; that he talked to Kay Cantrell about two days before the injunction suit was instituted; that the first time he knew that Kay Cantrell claimed he did not know about the main line crossing his property was when the Gas Company procured the injunction against him.

J. D. Jackson testified that he was Town Plant Manager; that some of the Gas Company's employees had gone on the defendants' land at least once a year to inspect the gas line.

Fred Bollinger testified he had been employed by the Gas Company approximately fourteen years; that the main gas line is and has been continuously inspected by employees of the Gas Company at least once a year; that he had checked the same two or three times; that he does not recall ever seeing the defendants while making the inspection; that there are Gas Company signs along the roadside north and south from the defendants' property; that he had been at defendants' home on several occasions for the purpose of installing new water heaters therein but does not remember ever telling them about the high pressure gas line running across their property until he saw the foundation of the new house going up; that he does not recall ever seeing the defendants while inspecting the line; that he does not remember ever digging on defendants' property; that ordinarily the main gas line is laid along the streets and alleys.

Marion E. Kidd testified that he had been working for the Gas Company approximately three years; that there is a sign along the roadside north from the Cantrell property but does not know how far away it is from said property; that he had helped test the gas pipe line across the defendants' property and that he had walked and barred the main line more than once a year; that he never did see the defendants during the time he was working on the premises; that he never had occasion to tell them about the high pressure gas line; that he never detected any gas leaks on their property; that there are no visible markings on the defendants' property which would indicate that a gas pipe line laid beneath the surface of the land; and that the dirt on defendants' premises is natural dirt and "you couldn't tell much about a ditch from the top surface."

We find nothing in the record, above the plane of pure speculation or conjecture, to suggest that the defendants knew, or are to be charged with actual knowledge that a high pressure gas line was imbedded under-

neath their land at the time they purchased it from Mrs. Jones.

There being no substantial evidence to support this finding that the defendants had actual notice of the location of the Gas Company's high pressure gas line at the time they purchased the land from Mrs. Lowrey Jones, the finding cannot be sustained on this appeal.

Manby v. Voorhees, supra; Jones v. Jernigan, supra; Salas v. Olmos, supra; Bland v. Greenfield Gin Co., supra; De Baca v. Kahn, supra.

Under point two it is argued that the defendants, as bona fide purchasers for value and without notice, acquired the land free and clear of any easement or right-of-way which plaintiff had previously obtained by grant from a prior owner, when the instrument granting the easement was unrecorded.

The general rule is stated in 19 C.J. page 939 and 940, Sections 146 and 147 under Easements, as follows:

"Notice of an easement may be imputed to the purchaser by a properly recorded instrument in which the easement is granted. And where the use of the easement is open and visible, the purchaser of the servient tenement will also be charged with notice, and that too although the easement was created by a grant which was never recorded. Nevertheless the purchaser of property may assume that no easements are attached to the property purchased which are not of record except those which are open and visible, and he cannot otherwise be bound with notice. There should be such a connection between the use and the thing as to suggest to the purchaser that the one estate is servient to the other.

"A purchaser of land who has no notice either actual or constructive, of an easement in such land in favor of third persons is free from the burden of such easement." See, also, 28 C.J.S., Easements, §§ 49, 50.

To bind a purchaser of servient estate by a servitude charged thereon, he should have notice thereof, as in case of other incumbrances upon land. Section 13–201 of 1941 Compilation, provides: "All deeds, mortgages, United States patents and other writings affecting the title to real estate, shall be recorded in the office of the county clerk of the county or counties in which the real estate affected thereby is situated."

Section 13–202, provides: "Such records shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording."

Section 13–203, provides: "No deed, mortgage or other instrument in writing, not recorded in accordance with section 4786 (§ 13–201), shall affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith, or judgment lien creditor, without knowledge of

the existence of such unrecorded instruments."

The plaintiff asserts it has title by prescription based on adverse use, although their rights originated by deed from defendants' predecessor in title.

■ The acquisition of an easement by prescription is somewhat analogous to acquisition of title by adverse possession. This court in Hester v. Sawyers, 41 N.M. 497, 71 P.2d 646, 112 A.L.R. 536, held the use necessary to acquire title by prescription must be open, uninterrupted, peaceable, notorious, adverse, under claim of right, and continue for a period of ten years with the knowledge or imputed knowledge of the owner. That opinion contains an able review of the history of the application of the period of limitational statutes respecting rights acquired by adverse possession to rights acquired by prescription and establishes that in this state the period of use necessary to create an easement by prescription is ten years following our statute of limitation with reference to adverse possession of land. Wilson v. Williams, 43 N.M. 173, 87 P.2d 683. This statute, Section 27–121, N.M.S.A.1941 Compilation, provides:

"No person * * * shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments, against any one having adverse possession of the same continuously in good faith, under color of title, but within ten (10) years next after his, her or their right to commence, have or maintain such suit shall have come, fallen or accrued, and all suits, either in law or equity, for the recovery of any lands, tenements or hereditaments so held, *shall be commenced within ten (10) years next after the cause of action therefor has accrued: * * *.* (Emphasis ours.)

" 'Adverse possession' is defined to be an actual and visible appropriation of land, commenced and continued under a color of title and claim of right inconsistent with and hostile to the claim of another * * *." Section 27–121, supra.

The rule seems well settled that a user may be adverse although originally based on an oral grant or one otherwise ineffective or invalid. See Thompson on Real Property, Section 432, at page 709, and the following cases cited by plaintiff: Gyra v. Windler, 40 Colo. 366, 91 P. 36; Lechman v. Mills, 46 Wash. 624, 91 P. 11, 13 L.R.A.,N.S., 990; Texas & P. Ry. Co. v. Scott, 5 Cir., 77 F. 726, 37 L.R.A. 94; Foster v. Patton, Tex.Civ.App., 104 S.W.2d 944, and Heard v. Bowen, Tex.Civ.App., 184 S.W. 234.

■ On the basis of these cases plaintiff argues that a use based on a written unrecorded grant is adverse in character be-

cause the use is not exercised in subordination to any higher title. It may be that such user is, in this sense, adverse, but prescriptive title cannot be obtained thereby. This is exactly the case which the recording statutes were designed to cover. In fact, this same consideration is given expression by the court in Heard v. Bowen, supra, 184 S.W. at page 236, to wit: "This is not the same kind of a case as that where one buys without knowledge of an * * * unrecorded deed, * * * because the law makes provision for the recording of such instruments, and provides especially what effect they shall have as against a purchaser without knowledge thereof."

The case nearest in point on facts with the one at bar which we have been able to find is that of Ayres v. Lucas, 116 Ind.App. 431, 63 N.E.2d 204. There, as here, a main gas pipe line was laid under the surface of appellees' land shortly after the execution of an instrument granting a right of way. The instrument was lost before recording and identically the same issue arose in the facts as here and was resolved against the contention of the plaintiff here. In other words, the facts there relied upon to show imputed notice were about on a plane with those here relied upon and were held insufficient to impute notice. The case certainly refutes any contention that a bona fide purchaser of real estate takes it subject to an easement therein of which there is no record, nor any visible signs on the ground

to put him on notice or inform him of its presence.

Touching the claim of a prescriptive right, we quote a passage from 28 C.J.S., Easements, § 7, page 642, which would be pertinent if that ground of recovery were open, as we later show it is not, to wit: "Where a right as to land by prescription is claimed, the period required for the prescription to mature does not begin until some act or fact exists giving the party against whom the prescriptive right is set up a cause of action * * *."

See Smith v. Russ, 17 Wis. 227, 84 Am.Dec. 739; Holsman v. Boiling Spring Bleaching Co., 14 N.J.Eq. 335; Turner v. Hart, 71 Mich. 128, 38 N.W. 890, 15 Am. St.Rep. 243; Quanah, A. & P. Ry. Co. v. Wiseman, Tex.Civ.App., 247 S.W. 695; Dernier v. Rutland Ry., Light & Power Co., 94 Vt. 187, 110 A. 4. Typical of the reasoning employed by these courts is a statement in Holsman v. Boiling Spring Bleaching Co., supra, 14 N.J.Eq. at page 345, to wit: "The ground of title by adverse enjoyment is, that the party against whom it is set up has so long permitted the adverse enjoyment and failed to vindicate his rights that the presumption of a grant is raised. There can be no such presumption, and consequently no title by adverse enjoyment where no violation of a right is shown to exist."

Further in 28 C.J.S., Easements, § 7, supra, is this statement: "If an easement is enjoyed under a deed there can be no adverse enjoyment until the expiration of the right under the deed". Citing Claflin v. Boston & Albany R. Co., 157 Mass. 489, 32 N.E. 659, 20 L.R.A. 638.

In the last cited case an easement of right of passageway over a railroad had been reserved to the grantors and the survivor of them for life. Thereafter, and after the original grantors were all deceased, one of the successors in title to the grantors conveyed property to the railroad, the deed containing this clause: "Reserving, also, to myself and my representatives forever the right of passage to and from the crossings heretofore secured to us." At the time of the second conveyance no right of way existed due to the deaths of the original grantors; therefore, there was nothing to sustain the exception contained in the second conveyance, and it was argued that a right of way had been obtained by prescription. The Court said among other things, that where the origin of an easement is known, a lost grant will not be presumed.

Thus, it is to be seen that a user cannot be termed "adverse" in the required sense when the one against whom the right is claimed, the defendants here, could never have protested the exercise of the right, because ignorant of the fact that any such right was claimed.

Plaintiff urges that a valid easement established by prescription is not to be extinguished upon transfer of the servient estate although the visibility of the use or its apparency may be slight or non-existent. We need not treat this question in view of our holding that an easement by prescription was not in existence at the time of the transfer.

Regardless of the character of the use of defendants' land made by plaintiff, defendants have not owned the land for ten years and prescription cannot be claimed against them.

Since no right existed by prescription at the time of the purchase of the property by defendants for value, plaintiff's easement could only be maintained by a showing that defendants were to be charged with actual or constructive notice of the unrecorded deed, which was not done anywhere in the record of this case.

The Gas Company contends that it was entitled to summary judgment on its motion therefor which the trial court denied. Even if this claim of error be deemed to have been preserved below, another consideration denies its importance now. It failed to assign error, if any, claimed to have been committed against it in this particular upon which it proposed to rely under Rule 17, Section 2, of New Mexico Supreme Court Rules, and hence under Rule 12, Section 3, of the above rules

it is precluded from now assigning such error. If an appellee wishes, in support of his judgment, to present error claimed to have been committed against him, he must do so either by cross-appeal or by assigning cross-error under the rule above cited. Otherwise, we cannot consider same.

Admittedly, there is hardship upon the Gas Company. It expended large sums of money in laying and maintaining its high pressure gas line but by reason thereof the court is not warranted in destroying defendants' settled property rights and saying to them that they can secure as good results by a different use of their property. This they are under no obligation to do. So to do would be an arbitrary exercise of power which is not warranted, however desirable and simple the building of their house five to ten feet away from the high pressure gas line may be.

We are of the opinion, that the court erred in holding that the Gas Company acquired an easement by prescription across the defendants' tract of land and that the easement acquired by it, under the facts shown was not extinguished by the transfer of ownership to the defendants.

It follows from all of the foregoing that the judgment of the district court is erroneous, and should be reversed, and the cause remanded, with directions to dissolve the injunction heretofore issued in the case, and to render judgment for the defendants. It is so ordered.

SADLER, McGHEE and COORS, JJ., concur.

COMPTON, J., did not participate.