612 P.2d 1335

Severo OTERO, and Irene Otero, his wife, Plaintiffs-Appellants,

v.

Alexandro PACHECO, and Velma L. Pacheco, his wife, Defendants-Appellees.

No. 3955.

Court of Appeals of New Mexico.

April 24, 1980.

Writ of Certiorari Denied June 20, 1980.

Ann Yalman, Santa Fe, for plaintiffs-appellants.

Robert Suzenski, Standley & Suzenski, Santa Fe, for defendants-appellees.

## OPINION

HERNANDEZ, Judge.

Plaintiffs-Appellants sued Defendants-Appellees alleging fraud and unjust enrichment due to plaintiffs' payment of ad valorem taxes which were owed by defendants. They further alleged that the sewer line which serviced both of their homes had backed up on various occasions, causing damage to their home. Defendants answered and counterclaimed, alleging that they had an easement across plaintiffs' property for the maintenance of the sewer line. The trial court, sitting without a jury, entered judgment for the plaintiffs on their claim for payment of taxes owed by defendants, and entered judgment for defendants on their counterclaim. The plaintiffs appeal the judgment entered for defendants.

The undisputed facts are these. The defendants acquired title to two lots in 1944, lots 4 and 5 of Block 5 of the Indian School Addition in the City of Santa Fe. Lot 5 fronted on Cochiti Street, and lot 4, a corner lot, sided on Taos Street. Defendants' home was constructed partly on lot 5 and partly on lot 4, and originally had a septic tank which was situated on lot 4. In 1950 the City of Santa Fe notified defendants that they had to abandon the use of their septic tank, and connect to the sanitary sewer line which had just been installed along Taos Street.

Defendants installed a sewer line running from their home across lot 4 to the Taos Street sewer line. There is no evidence that there existed any alternative way to connect to the Taos Street sewer, and there was no sanitary sewer line along Cochiti Street at that time. In 1951 the defendants built another house on the remaining part of lot 4, and connected it to the same sewer line. Defendants in 1953 sold this house to a Mrs. McAfoos. The deed to Mrs. McAfoos did not contain a reservation of an easement. However, defendant Alexandro Pacheco testified that he told Mrs. McAfoos of the sewer line's existence and that it provided service to his home. The title passed from Mrs. McAfoos through several intervening owners and ultimately came to the plaintiffs in 1965. The first owner after Mrs. McAfoos testified that he was never told, and did not know, that the sewer line serviced defendants' home during the approximately eight years that he owned that property. Plaintiff Severo Otero testified that he did not learn until 1974 that the sewer line which serviced his house also serviced that of the defendants.

Plaintiffs raise four points of error, only three of which need be discussed. The essence of the first two is that the trial court erred in deciding that the defendants had an easement across lot 4. The pertinent findings of the trial court, all of which are supported by substantial evidence in the record, are: that the defendants acquired title to both lots 4 and 5 in 1944; that the sewer line was reasonably necessary to the use and enjoyment of lot 5 at the time of the sale of lot 4, and that it continues to be reasonably necessary to the use and enjoyment of lot 5; and "that . . . the

. . . sewer line was and now is an improvement of a permanent and substantial character, actually and apparently intended to be preserved as a servitude for the . . . necessary [and] . . . convenient use and enjoyment of the Pacheco lot and residence." The trial court went on to conclude that the defendants had an easement across lot 4 for a sewer line for the benefit of lot 5 and that the plaintiffs took title to lot 4 subject to that easement.

■ Although the trial court did not characterize the type of easement, it is readily apparent from the findings that the court was speaking of an easement by implied reservation. Whether such an easement is recognized by the appellate courts of this State is a matter of first impression. However, the converse, i. e., an easement by implied grant, was recognized by our Supreme Court in *Venegas v. Luby*, 49 N.M. 381, 164 P.2d 584 (1945):

It seems well settled . . . that if the owner of land subjects one part of it to a visible servitude in favor of another and then conveys away the dominant portion while it is enjoying the servitude of the portion retained, and the use is reasonably necessary for the full enjoyment of the part granted, an implied easement arises in favor of the premises conveyed and passes by the conveyance without mention.

The nature of and rationale for these two types of easements was very ably set forth by the Supreme Court of Texas in *Mitchell v. Castellaw*, 151 Tex. 56, 246 S.W.2d 163 (1952):

It is universally recognized that where the owner of a single area of land conveys away part of it, the circumstances attending the conveyance may themselves, without aid of language in the deed, and indeed sometimes in spite of such language, cause an easement to arise as between the two parcels thus created—not only in favor of the parcel granted ("implied grant") but also in favor of the one remaining in the ownership of the grantor ("implied reservation"). The basis of the doctrine is that the law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration. And in the case of an implied reservation it is not necessarily a bar to its creation that the grantor's deed, into which the law reads it, actually warrants the servient tract thereby conveyed to be free of incumbrance.

There is a split in authority over the question of the degree of necessity that is required to imply the retention of an easement. According to one view, an easement is implied by reservation only where there is strict necessity. *Winthrop v. Wadsworth*, 42 So.2d 541 (S.Ct.Fla., 1949). The other view was set forth by the Supreme Court of Oregon in *Jack v. Hunt*, 200 Or. 263, 264 P.2d 461 (1953):

The majority rule makes no distinction between the degree of necessity in the granting or the retaining of an implied easement. In either circumstances the degree of necessity is answered 'if necessary to the reasonable enjoyment of the property'.

The trial court thought that reasonable necessity was the better view, and so do we. This view is more in harmony with *Venegas v. Luby, supra*, than is strict necessity. However, in *Venegas*, it is clearly indicated that reasonable necessity is not synonymous with mere convenience.

■ Applying the foregoing to the facts of this case, the trial court was correct in deciding that the defendants had an easement by implied reservation as the result of a reasonable necessity which continues to exist.

■ The plaintiffs' third point of error is that they were allegedly bona fide purchasers for value of lot 4, and that they took free and clear of any easement of which they had no notice. The general rule is that a bona fide purchaser does not take subject to an easement unless he has actual or constructive knowledge of its existence. *Southern Union Gas Co. v. Cantrell*, 56 N.M. 184, 241 P.2d 1209 (1952). However, the law charges a person with notice of facts which inquiry would have disclosed where the circumstances are such that a reason-

ably prudent person would have inquired. *Sanchez v. Dale Bellamah Homes of New Mexico, Inc.*, 76 N.M. 526, 417 P.2d 25 (1966).

While there is come conflict of authority as to whether existing drains, pipes, and sewers may be properly characterized as apparent, within the rule as to apparent or visible easements the majority of the cases which have considered the question have taken the view that appearance and visibility are not synonymous, and that the fact that the pipe, sewer, or drain may be hidden underground does not negative its character as an apparent condition; at least, where the appliances connected with and leading to it are obvious. 58 A.L.R. 832; *Helle v. Markotan*, 137 N.E.2d 715 (Ohio Com.Pl.1955); *Frantz v. Collins*, 21 Ill.2d 446, 173 N.E.2d 437 (1961).

The circumstances in this situation were such that a reasonably prudent person would have inquired.

We need not consider plaintiffs' fourth point of error because, even if we were to decide that it had merit, it would not alter the outcome of this case.

The judgment is affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

ANDREWS, J., dissenting.

ANDREWS, Judge (dissenting).

I dissent.

I cannot agree with the majority that the circumstances were such as to put the Oteros on constructive notice of the existence of the sewer line.

. . . the purchaser of property may assume that no easements are attached to the property purchased which are not of record except those which are open and visible, and he cannot otherwise be bound with notice. There should be such a connection between the use and the thing as to suggest to the purchaser that the one estate is servient to the other.

*Southern Union Gas Co. v. Cantrell*, 56 N.M. 184 at 190, 241 P.2d 1209 at 1213 (1952).

The facts in this case do not support the inference that the Oteros had constructive notice of the existence of the sewer line. While the appearance of the adjoining Pacheco property was such as to suggest that it was connected to a sewer line, there is nothing in the record to indicate that it was in any way apparent that it, *at one time*, had been necessary to lay such a line under the Oteros' land. The history of the development of the sewer system in the area is not apparent to the average purchaser, and the Oteros were justified in assuming that the Pachecos' sewer connections did not impinge on the property rights of the surrounding landholders.

I would reverse.