This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**PRISCILLA JARAMILLO and**
**VERNON JARAMILLO,**

    Plaintiffs-Appellants,

v.                                                  NO.  32,298

**FERMIN ROMERO SR. and**
**FERMIN L. ROMERO JR.,**

    Defendants-Appellees,

and

**THE ESTATE OF RICHARD SUAZO,**
**and BETSY SUAZO ALLANDER,**

    Defendants.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Sheri A. Raphaelson, District Judge**

VanAmberg, Rogers, Yepa,
Abeita & Gomez, LLP
Ronald J. VanAmberg
Santa Fe, NM

for Appellants

Jones & Smith Law Firm LLC

J. Brian Smith
Albuquerque, NM

Chandler Law of Los Alamos
George Chandler
Los Alamos, NM

for Appellees

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}    Plaintiffs Priscilla and Vernon Jaramillo (Jaramillos) appeal the entry of an adverse judgment following a bench trial at which the district court was asked to quiet title to an easement across the land of Defendants Fermin Romero Sr. and Fermin L. Romero Jr. (Romeros) for the benefit of the Jaramillos' adjacent parcel. The district court found that the Jaramillos had not met their burden of establishing the existence of any type of easement across the Romeros' property and also that any claimed easement for the purpose of providing access to the Jaramillos' parcel was (or would have been) extinguished when the Jaramillos obtained an adjacent parcel that abutted a public roadway. Based upon the facts and argument presented to the district court, we find no error and, accordingly, affirm.

**STANDARD OF REVIEW**

**{2}** In reviewing a judgment entered after a bench trial, we review the district court's application of law to facts de novo while reviewing the district court's findings of fact for substantial evidence. *Skeen v. Boyles*, 2009-NMCA-080, ¶ 17, 146 N.M. 627, 213 P.3d 531. In reviewing facts found by the district court, we consider whether substantial evidence supports the result reached, not whether there is substantial evidence to support the opposite result. *Id.* "Substantial evidence is relevant evidence that a reasonable mind would find adequate to support a conclusion." *Sitterly v. Matthews*, 2000-NMCA-037, ¶ 22, 129 N.M. 134, 2 P.3d 871. Further, where "a finding is made against the party with the burden of proof, we can affirm such a finding if it was rational for the fact finder to disbelieve the evidence offered in support of that finding." *Sosa v. Empire Roofing Co.*, 1990-NMCA-097, ¶ 8, 110 N.M. 614, 798 P.2d 215.

**THEORIES OF EASEMENT CREATION**

**{3}** At trial, the Jaramillos bore the burden of proof with regard to the establishment of an easement appurtenant to their property. The Jaramillos asserted four separate theories for the existence of such an easement, each of which was rejected by the district court. We will address each of those easement theories in sequence before turning to the district court's basis for concluding that, even if an easement had arisen, such easement would have been extinguished by the Jaramillos' subsequent

3

acquisition of title to "contiguous property from County Road 177 to the Ojo Caliente River."

**I.  Express Easement**

{4}  The Jaramillos first argue that the easement they seek to enforce was expressly reserved by a common grantor. Prior to 1949, all of the property at issue in this case was part of a common parcel owned by an ancestor of the Jaramillos (Federico) who divided the property and conveyed separate parcels to each of his children. Thus, title to all the property at issue in this case can be traced to a common grantor. Several of the parcels at issue were conveyed over the years by deeds that included the Spanish phrase "con sus derechos de agua y entradas y salidas libres." The Jaramillos translate this phrase to mean "with your rights to the water and free access." The Romeros translate the phrase to mean "with your rights to the water and free entrance and exits." For purposes of analysis, we assume that the Jaramillo's translation is correct. The parties dispute whether this deed language is sufficiently specific to create an express easement. Generally, although no "particular words" must be used to create an express easement, the language used must be "certain and definite in its term[s]." *Martinez v. Martinez*, 1979-NMSC-104, ¶ 10, 93 N.M. 673, 604 P.2d 366; *but see Vill. of Wagon Mound v. Mora Trust*, 2003-NMCA-035, ¶ 47, 133 N.M. 373, 62 P.3d

4

1255 (recognizing a "floating" easement where the burdened parcel was identified, although the actual location thereof was not specifically delineated). Although the Jaramillos' deeds contained the "free access" language, none of those deeds ever described the location of any easements nor did they identify any land that would be burdened by such easements.

{5}     This Court need not address the question of whether the words "free access" are sufficiently certain and definite to create an easement, however, because there is no dispute that one of the parcels that the Jaramillos propose to burden with an easement was conveyed without reference to any easement and without the inclusion of any reference to "free access." And, importantly, that conveyance occurred in 1949, prior to Federico's conveyance of any of the parcels that would be benefitted by the Jaramillos' proposed easement. As a result, at the time that Federico subsequently conveyed the property by way of deeds that included the "free access" language, he no longer owned one of the parcels that the Jaramillos now claim is burdened by their easement.

{6}     As the district court noted, Federico could not have intended to create an easement on land he did not own, since "he would not have [had] the ability to grant an easement through someone else's property." It is well-settled that a " 'grantor cannot place restrictions on land he does not own.' " *Pollock v. Ramirez*, 1994-

5

NMCA-011, ¶ 14, 117 N.M. 187, 870 P.2d 149 (quoting *Trahms v. Starrett*, 110 Cal. Rptr. 239, 242 (Ct. App. 1973)); *see also Martinez*, 1979-NMSC-104, ¶ 9 (noting that rights of ingress and egress referenced in a deed could only refer to land involved in conveyance, and "not to any third party's land abutting the devised land").

{7} Because the Jaramillos' proposed easement crossed land that Federico did not own at the time he conveyed the property that would be benefitted by that easement, it is not possible that the easement asserted by the Jaramillos was created by express reservation of the parties' common grantor. The district court's conclusion that no such easement existed is affirmed on that basis.

**II.     Easement by Estoppel**

{8} The Jaramillos next argue that the easement at issue arose by way of estoppel. New Mexico courts have yet to apply the doctrine of easement by estoppel, although the possible viability of that doctrine has been recognized in *dicta*. *See Luevano v. Maestas*, 1994-NMCA-051, ¶ 14, 117 N.M. 580, 874 P.2d 788 ("On some facts, long-standing use of a road coupled with inaction by the landowner may give rise to an easement by estoppel."); *Luchetti v. Bandler*, 1989-NMCA-048, ¶ 14, 108 N.M. 682, 777 P.2d 1326 (assuming without deciding that easements may arise by estoppel in New Mexico). As a result, the doctrine has not been fully defined by the courts of this state, and the Jaramillos provide no further delineation of the doctrine in their

briefing before this Court. For present purposes, we will assume that the Jaramillos intend the doctrine to be applied as defined in the Restatement (Third) of Property (Servitudes):

> If injustice can be avoided only by establishment of a servitude, the owner or occupier of land is estopped to deny the existence of a servitude burdening the land when:
>
> > (1)  the owner or occupier permitted another to use that land under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked, and the user did substantially change position in reasonable reliance on that belief; or
> >
> > (2)  the owner or occupier represented that the land was burdened by a servitude under circumstances in which it was reasonable to foresee that the person to whom the representation was made would substantially change position on the basis of that representation, and the person did substantially change position in reasonable reliance on that representation.

Restatement (Third) of Prop.: Servitudes § 2.10 (2000); *see also Young v. Seven Bar Flying Serv., Inc.*, 1984-NMSC-069, ¶ 9, 101 N.M. 545, 685 P.2d 953 (describing elements of estoppel).

{9}  At trial, the Jaramillos asserted that an easement arose by way of estoppel sometime after 1992, when the Romeros acquired their first parcel at issue in this case. On appeal, the Jaramillos argue for the first time that an easement by estoppel arose sometime prior to 1992. This Court, of course, reviews "the case litigated below, not

7

the case that is fleshed out for the first time on appeal." *In re T.B.*, 1996-NMCA-035, ¶ 13, 121 N.M. 465, 913 P.2d 272.

{10} At trial, the district court entered a specific finding that the Romeros erected a gate in 1992 or 1993 that prevented access to their property by others. This finding negates the first and second elements of easement by estoppel, which require, first, that the defendant "permitted another to use [the] land" and, second, that such permission was given "under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked." Restatement (Third) of Prop.: Servitudes § 2.10(1). Thus, if the Romeros did not permit the Jaramillos to use their property, it is not possible for that property to have been burdened by an easement by estoppel.

{11} There was substantial evidence to support the district court's finding that the Romeros did not permit the Jaramillos to cross their land. The Defendants offered testimony at trial that as they acquired the property at issue, they built various fences around their land, repaired two bridges that crossed drainage ditches, and erected a new metal gate across an access road at the point where it crosses a drainage ditch. Importantly, they testified that they kept that gate locked, thereby preventing the Jaramillos from accessing their property. Fermin Romero Jr. specifically testified that the gate was erected and locked beginning sometime in 1993. Fermin Romero Sr.

testified that the gate was locked "in 1992-93, around there sometime." Asked whether he had ever seen the Jaramillos drive across his property, Fermin Romero Sr. testified, "No, it was locked."

{12}    Although the Jaramillos argue that "other evidence points in the opposite direction," the question for this Court is "not whether substantial evidence exists to support the opposite result, but rather[,] whether such evidence supports the result reached." *Skeen*, 2009-NMCA-080, ¶ 17 (internal quotation marks and citation omitted). The Romeros' testimony regarding the gate was both relevant to the issue of easement by estoppel and adequate to support the district court's conclusion that no such easement arose. *See id.* The district court's findings regarding the gate were supported by substantial evidence, and its conclusion regarding easement by estoppel is affirmed.

**III.    Prescriptive Easement**

{13}    The Jaramillos next claim that they acquired an easement across the Romeros' land by way of prescription. In order to clarify the law of prescriptive easements, our Supreme Court has adopted the approach of the Restatement (Third) of Property, which explains that "an easement by prescription is created by an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period (of ten years)." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 10, 133

9

N.M. 50, 61 P.3d 176 (citing Restatement (Third) of Prop.: Servitudes §§ 2.16, 2.17 (2000)). In order to establish an easement by prescription, each of the elements thereof must be proved by clear and convincing evidence. *Algermissen*, 2003-NMSC-001, ¶ 9.

{14}     At trial, the Jaramillos asserted both that a prescriptive easement arose prior to 1992, when the Romeros first acquired their property and, alternatively, that a prescriptive easement arose sometime after 1992, while the Romeros owned the property at issue. With regard to the period following 1992, the Jaramillos' claim fails by virtue of the district court's finding, discussed immediately above, that the Romeros erected a gate that prevented the Jaramillos from crossing their land. And it appears that the Jaramillos have abandoned that alternative argument on appeal.

{15}     With regard to the period prior to 1992, the central issue is whether the use of an access road across what is now the property of the Romeros by the Jaramillos (and by their predecessors in interest) was "an adverse use," as required by the Restatement approach. The district court answered that question in the negative, specifically finding that there was "never any hostile use" of the property. Because the Jaramillos bore the burden of proving adverse use of the property, the district court's finding may be affirmed "if it was rational for the fact finder to disbelieve" the Jaramillos' evidence on point. *Sosa*, 1990-NMCA-097, ¶ 8.

10

**{16}** However, because it is often difficult to prove adversity or lack thereof, "a series of presumptions are used" to accomplish that task. *Algermissen*, 2003-NMSC-001, ¶ 11. The Jaramillos assert that they are entitled to a presumption that "the use is presumed to be adverse in the absence of proof of express permission." *Id.* Various counter-presumptions are also available. For instance, where the claimed easement crosses "large bodies of privately owned land [that] are open and [unenclosed]," the use is presumed to be permissive. *Hester v. Sawyers*, 1937-NMSC-056, ¶ 22, 41 N.M. 497, 71 P.2d 646. Similarly, where "the initial users were closely related, or enjoyed close neighborly relations, or [where] a custom existed in the neighborhood for neighborly accommodation by permitting use of neighboring land for access to fields and public roads," the use is presumed to be permissive, instead of adverse. Restatement (Third) of Prop.: Servitudes § 2.16, cmt. g. vol. 1, at 234.

**{17}** Further, where "a use has its inception in permission, express or implied, it is stamped with such permissive character and will continue as such[,] until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts." *Hester*, 1937-NMSC-056, ¶ 25. Thus, the task for the district court in this case was to determine whether the Jaramillos' predecessors made use of the Romeros' property in a way that was either adverse at its inception or that subsequently became adverse by the "positive assertion of a right hostile to the owner" of the land. *Id.*

{18} In addressing that task, the district court was entitled to consider both the character of the land at issue, which encompassed large bodies of unenclosed land, and also the relationship between the historical owners of that land, who were all closely-related family members. *See Algermissen*, 2003-NMSC-001 ¶ 13 ("Evidence of permission, be it express or implied, is relevant to this inquiry."). Thus, the district court could properly conclude from the evidence received at trial that the Jaramillos were not entitled to a presumption of adversity. Further, although presumptions shift the burden of production from one party to another, the burden of persuasion always "remains on the party who had it originally." Rule 11-301 NMRA. Thus, the district court could also properly have concluded that the Jaramillos simply did not meet their burden of establishing adversity with regard to the historical uses of the property at issue.

{19} Having reviewed the evidence and argument presented, we conclude that the district court's finding of permissive use, as opposed to hostile use, is supported by substantial evidence. Having properly found that the uses of the property were not adverse to the owners thereof, the district court properly concluded that no prescriptive easement in favor of the Jaramillos arose, and that conclusion is here affirmed.

12

## IV.   Easement Implied by Necessity

{20}   Finally, the Jaramillos assert that the district court should have implied an easement across the land of the Romeros by necessity.

> An easement by necessity requires: (1) unity of title, indicating that the dominant and servient estates were owned as a single unit prior to the separation of such tracts[;] (2) that the dominant estate has been severed from the servient tract, thereby curtailing access of the owner of the dominant estate to and from a public roadway; and (3) that a reasonable necessity existed for such right of way at the time the dominant parcel was severed from the servient tract.

*Hurlocker v. Medina*, 1994-NMCA-082, ¶ 5, 118 N.M. 30, 878 P.2d 348 (internal quotation marks and citation omitted). Mere convenience will not be enough to establish an easement by necessity. *See Otero v. Pacheco,* 1980-NMCA-058, ¶ 5, 94 N.M. 524, 612 P.2d 1335.

{21}   As noted above, title to all of the property at issue in this case can be traced to a common grantor, Federico, who divided the property and conveyed separate parcels to his children. The Jaramillos assert that, because some of the parcels created by those conveyances had no access to a public roadway, easements by necessity for the purpose of ingress and egress arose by virtue of Federico's division of the property into separate parcels. Because easement by necessity requires that a reasonable necessity for a right of way exists at the time the parcels are severed from one another, it is important to consider the sequence in which the parcels were conveyed by

Federico. *See Venegas v. Luby*, 1945-NMSC-045, ¶ 15, 49 N.M. 381, 164 P.2d 584 (stating that "necessity at the time of the conveyance governs" (internal quotation marks and citation omitted)).

{22}     Federico's division of the property at issue in this case occurred over the course of a quarter-century. As noted above, Federico conveyed away a parcel of land in 1949 that would eventually be owned by the Romeros. At that time, both Federico's remaining land and the parcel conveyed had roadway access. [Id.] In September, 1962, however, Federico conveyed five separate plots to his five children, none of which had access to a public roadway. Finally, by way of three conveyances in the summers of 1965 and 1975, Federico deeded to various children the remainder of the property at issue in this case.

{23}     Thus, if any easement arose by necessity, it must have arisen in September, 1962, when Federico deeded five newly-landlocked plots to his children. At that time, Federico still owned property between the newly-severed plots and the road, but he did not own the parcel conveyed in 1949, across which the Jaramillos' proposed easement would now run.

{24}     Because Federico did not own that parcel in 1962, the Jaramillos cannot establish that any land was severed from that parcel in 1962. *See Hurlocker*, 1994-NMCA-082, ¶ 5 (noting that a dominant estate must be severed from servient tract,

14

"thereby curtailing access of the owner of the dominant estate to and from a public roadway" (internal quotation marks and citation omitted)). Further, because that parcel was severed from Federico's estate in 1949, when Federico's remaining holdings still fronted a public road, the Jaramillos cannot establish any reasonable necessity for an easement across that parcel at the time it was severed from the rest of Federico's land. *See id.* (noting that the need for an easement must exist "at the time the dominant parcel was severed from the servient tract"). Thus, contrary to the claim of the Jaramillos, it is not possible for an easement to have arisen by necessity across that portion of the Romeros' land that was conveyed by Federico in 1949. Because the Jaramillos' claim depends upon an easement that crosses that parcel, the district court could properly have concluded that no easement by necessity arose in this case.

{25}   Instead, the district court merely found that no such easement exists today, apparently relying upon the cessation of purpose doctrine, which is discussed immediately below. This Court, however, "may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." *State v. Wasson*, 1998-NMCA-087, ¶ 16, 125 N.M. 656, 964 P.2d 820. The failure of the facts in this case to establish the Jaramillos' claimed easement by necessity is evident without looking beyond the facts raised below. Those facts establish that the easement

15

proposed by the Jaramillos did not arise by necessity because no such necessity existed in 1949, when the first parcel alleged to be burdened by that easement was severed from the estate of the parties' common grantor. The district court's rejection of an easement by necessity is affirmed on that basis.

**CESSATION OF PURPOSE**

{26}     The district court also concluded that, if any easement in favor of the Jaramillos' property ever existed, such easement would have been extinguished pursuant to the doctrine of cessation of purpose. Pursuant to that doctrine, "[a]n easement created to serve a particular purpose terminates when the underlying purpose for the easement ceases to exist." *Sitterly*, 2000-NMCA-037, ¶ 23 (citing *Olson v. H & B Props., Inc.*, 1994-NMSC-100, ¶ 13, 118 N.M. 495, 882 P.2d 536).

{27}     The Jaramillos contend that *Sitterly* does not apply to defeat their right to an easement because the easement is by grant. [**BIC 15; RB 8-9**] As noted above, we affirm the district court's conclusion that no express easement was created by the parties' common grantor. And, in any event, the Jaramillos misstate the law as it was declared in *Sitterly*.

{28}     That opinion affirmed the extinguishment of an easement by necessity despite the defendant's assertion that the easement at issue had been converted to an express easement by an intervening action to quiet title. *Sitterly*, 2000-NMCA-037, ¶ 25. In

16

explaining the defendant's argument on appeal, this Court quoted a passage from a New York case to the effect that " 'when we are dealing with an easement by grant, the fact that it may have also qualified as an easement of necessity, does not detract from its permanency as a property right, which survives the termination of the necessity.' " *Id.* (quoting *Valicenti v. Schultz*, 209 N.Y.S.2d 33, 37 (1960)).

**{29}** The passage quoted, however, played no part in the holding in *Sitterly*. In fact, the *Sitterly* Court neither adopted nor applied the principle stated in that quote, because the easement at issue in *Sitterly* retained its character as an easement by necessity, intervening events notwithstanding. *Id.* ¶ 26. As a result, *Sitterly* does not hold that the cessation of purpose doctrine applies any less to express easements than it does to easements by necessity. Further, our Supreme Court has explicitly applied the cessation of purpose doctrine to an express easement. *See Olson*, 1994-NMSC-100, ¶¶ 11, 15 (viewing document "as creating an express easement" and holding that "pursuant to the cessation of purpose doctrine [the easement] was extinguished"). Thus, under current New Mexico law, when an easement—even an express easement —is created for a specific purpose, such as ingress and egress, that easement may be terminated "when the underlying purpose for the easement no longer exists." *Id.* ¶ 13.

**{30}** In this case, the parties stipulated and the district court found that from October 28, 1993 until September 7, 1999, "the Jaramillos owned contiguous property from

17

County Road 177 to the Ojo Caliente River." As a result, the Jaramillos' property had direct access to a public road, and the Jaramillos did not need any easement across the land of the Romeros in order to access their land. Thus, even if the Jaramillos ever held an easement for purposes of ingress and egress, the underlying purpose of such easement would have ceased to exist as of October 28, 1993. The district court correctly concluded, based upon these stipulated facts, that when the Jaramillos "gained title to property that gave them access to a County road, any easement or claim of easement that the Jaramillos had to the Romero Property was extinguished."

{31} The judgment of the district court is affirmed in its entirety.

{32} **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**