Argued October 26, reversed December 9, 1953, petition
for rehearing denied January 13, 1954

## JACK *v*. HUNT ᴇᴛ ᴜx.

264 P. 2d 461
265 P. 2d 251

*William E. Dougherty,* of Portland, argued the cause for appellants. With him on the brief were Donald E. Heisler, of The Dalles, and Raymond M. Kell, of Portland.

*Roger L. Dick,* of The Dalles, argued the cause for respondent. With him on the briefs were Dick & Dick, of The Dalles.

Before LATOURETTE, Chief Justice, WARNER, ROSSMAN, LUSK, TOOZE and PERRY, Justices.

PERRY, J.

This is a suit brought by the plaintiff Bertha Snipes Jack: against the defendants Charles R. Hunt and Mary Hunt, husband and wife, to enjoin the defendants from obstructing a private road or driveway and to establish an easement along said roadway for the use and benefit of the property owned by the plaintiff.

The defendants are the owners of the following described real property situated in Wasco County, State of Oregon:

"Beginning at the Northwest corner of Tract One (1) Snipes Acres, running thence Northeasterly along line between Tracts One (1) and Two (2) of said Snipes Acres, a distance of 345 feet; thence Southeasterly and at right angles with the first-mentioned course a distance of 37 feet; thence Northeasterly and parallel to said line between said Tract One (1) and Two (2), a distance of 155 feet to West right of way line of Columbia River Highway; thence Southeasterly along said right of way, a distance of 153 feet; thence Southwesterly, and at right angles to said right of way, a distance of 500 feet to the West line of said Tract One; thence Northwesterly along West boundary of said Tract One, 190 feet to point of beginning. Contains 2.04 acres."

and the plaintiff is the owner of the following described real property situated in Wasco County, State of Oregon:

"Beginning at the Northeast corner of Tract One (1) Snipes Acres, running thence Southwesterly along line between Tracts One (1) and Two (2) of said Snipes Acres, a distance of 155 feet; thence Southeasterly, and at right angles to the first mentioned course, a distance of 37 feet; thence North-

easterly and parallel to line between said Tracts One and Two, a distance of 155 feet, to West right of way line of Columbia River Highway; thence Northwesterly along said right of way, 37 feet, to point of beginning. Contains 0.13 of an acre."

For a number of years prior to October 6, 1944, the plaintiff was the owner of both tracts of land hereinabove described, and on October 6, 1944, she conveyed to the defendants the property first-above described (upon which the roadway in question is situated), and retained for herself the property second-above described. Plaintiff's northerly boundary line of 37 feet is appurtenant to the Columbia River highway.

The roadway in which the plaintiff seeks a perpetual easement appurtenant to her property runs generally in a northerly and southerly direction along the western boundary of the plaintiff's property from the Columbia River highway and terminates on the defendants' property beyond the southerly boundary of plaintiff's property. The house is so situated upon plaintiff's property that no motor vehicle access can be had upon her property to the rear portion thereof.

Prior to the separation of the property into the two tracts the plaintiff operated upon the land conveyed to the defendants a motor court and a trailer park, maintaining upon the property retained by her a house, and a shed used as a garage and for storage. Subsequent to the conveyance of the property to the defendants plaintiff constructed on the northerly portion of the property retained by her a small rental house, and to the rear of her home she constructed a grain storage bin.

The deed of conveyance from the plaintiff to the defendants contained the usual warranties and made

no reservation of any easement upon the roadway in question.

The trial court found that there existed an easement upon this roadway for the benefit of the real property reserved by the plaintiff and enjoined the defendants from obstructing the plaintiff's use thereof. From this decree of the trial court the defendants have appealed.

The question before us is whether or not under the circumstances disclosed by the record an easement appurtenant by implied reservation was created upon the severance of the two tracts.

■ Whether an easement by implied reservation is created depends upon the intention of the parties to the transaction; this to be inferred from all of the circumstances under which the conveyance was made, as stated in Restatement, Property, Servitudes, 2972, Creation, § 474:

> "When land in one ownership is divided into separately owned parts by a conveyance, an easement may be created * * * in favor of one who has or may have a possessory interest in one part as against one who has or may have a possessory interest in another part by implication from the circumstances under which the conveyance was made, alone."

"Implication from the circumstances" of the transaction necessarily takes into consideration many elements which are set forth in Restatement, Property, Servitudes, 2977, Creation, § 476, as follows:

> "In determining whether the circumstances under which a conveyance of land is made imply an easement, the following factors are important
>
> "(a) whether the claimant is the conveyor or the conveyee,
>
> "(b) the terms of the conveyance,
>
> "(c) the consideration given for it,

"(d) whether the claim is made against a simultaneous conveyee,

"(e) the extent of necessity of the easement to the claimant,

"(f) whether reciprocal benefits result to the conveyor and the conveyee,

"(g) the manner in which the land was used prior to its conveyance, and

"(h) the extent to which the manner of prior use was or might have been known to the parties."

This list of factors as set forth above is not exhaustive. They are, however, the factors most commonly arising and are at best merely guide posts in determining the assumed intention of the parties as they are presumed to have existed in relationship to the continuation of the easement for the benefit of the dominant property at the time the contract was consummated and the unity of title in the tract of land severed.

In each instance the rule of necessity in some degree is applied. The majority rule makes no distinction between the degree of necessity in the granting or the retaining of an implied easement. In either circumstance the degree of necessity is answered "if necessary to the reasonable enjoyment of the property" (28 CJS 694, Easements, § 34). The minority rule, "however, urge that a grantor should not be permitted to derogate from his grant and accordingly in many jurisdictions the rule is established that, where there is a grant of land without express reservation of easements, there can be no reservation by implication, unless the easement is strictly one of necessity," (28 CJS 694, supra).

The question of the degree of necessity to imply the retention of an apparent and permanent easement has not before been considered by this court, but the degree of necessity to carry an easement by grant has been

held to be that "reasonably necessary to the enjoyment of the property" conveyed. *German Savings & Loan Soc. v. Gordon,* 54 Or 147, 102 P 736.

The rule of reasonable necessity relative to a retained quasi easement was first applied in the case of *Pyer v. Carter,* 1 Hurlstone & Norman's, 916, and although later denied in *Suffield v. Brown,* 4 De Gex, J & S, 185, it appears nevertheless to be generally accepted by the majority of the courts in this country.

■ We are of the opinion that in matters of this kind the rule should be less strict than that of absolute and indispensable necessity. However, such a rule of reasonable necessity should not be grounded in mere convenience, but rather in the necessity appearing from the apparent purpose, the adaptability, and the known use to which the property is to be put. This so that the court may say that the parties as reasonable men contemplated and duly considered the continued use of the quasi easement claimed as necessary to a reasonable enjoyment of the dominant estate at the time of conveyance.

■ "Reasonable necessity" as distinguished from "absolute and indispensable necessity" is, therefore, relative and not in itself controlling, for whether or not an easement is created is primarily one of construction permitting the courts to weigh all of the circumstances attendant upon the conveyance in determining whether the parties intended that an easement should be created. *Rose et ux. v. Denn et ux.,* 188 Or 1, 212 P2d 1077, 213 P2d 810.

■ In considering the circumstances attendant, the factors (1) whether the claimant is the conveyor or the conveyee, (2) the terms of the conveyance, (3) the consideration given for it, and (4) whether reciprocal

benefits result to the conveyor and the conveyee, are likewise relative.

In this matter plaintiff was paid the full consideration for the land; she conveyed by warranty deed, warranting against incumbrances; and no reciprocal benefits resulted to the parties. Therefore, the conspicuity, i.e., the extent to which the manner of prior use was or might have been known to the parties (Restatement, Property, Servitudes, 2977, Creation, § 476 (h), supra), apparent purpose and reasonable necessity by reason of the use made and to be made of the premises must appear clear and cogent to overcome the import of the above factors.

Plaintiff testified she retained the land with the existing house thereon for residential purposes; that 37 feet thereof fronts on the Columbia River highway; that she and her husband had in 1939 acquired all of the property hereinbefore described from one Frank Fisch, and there was at that time situated thereon the house now retained by the plaintiff for residential purposes and an auto court and house trailer parking accommodations; that the driveway in question upon which the easement is claimed provided a roadway from the trailer park to the Columbia River highway: "That driveway went out to what this Auto Court is and where the toilets and showers are for the Court; and that road went directly out there, and there was an Auto Court there when I had it". But the road is in the same location now and is situated on the property sold and conveyed to the defendants.

Plaintiff's house is so situated on her property that from her house to the property line of the adjoining owner on the west there is a distance of approximately three feet, and on the east from her house to the prop-

erty line of the land sold the defendant there is a distance of approximately one foot; and there is no way an automobile or truck can be driven to the rear of plaintiff's home without using the roadway upon the land conveyed to the defendants. It is shown by the testimony that situated to the rear of the house was a somewhat dilapidated building useable (but not used) as a private garage, and also a storeroom and woodshed; and that plaintiff's septic tank and later a well were also located to the rear of her home.

As to the use of the roadway from 1939 to 1944, plaintiff testified as follows:

"Q From 1939 until you sold the property in 1944, was that roadway used?

"A Yes, the roadway was used all the time.

"Q For what general purpose?

"A I had a Trailer Court out there the same as it is now.

"Q Was it used for any other purpose?

"A Only just go in the Trailer Court and toilets and washrooms and things that is in a Trailer Court.

"Q How about delivery people?

"A They could get in there.

"Q Did you ever use the roadway between 1939 and 1944?

"A It was the only way I had to use it. I had to get in and out to bring anything in."

As to the use of the road subsequent to the sale of the property to the defendants, plaintiff testified as follows:

"Q What was the roadway used for between 1944 and 1949?

"A Well, the grocery wagon came in, and the doctor could come in with his ambulance, and he could come in with his car, and anybody that came in there; and in the back I had the wood come in, and the fuel oil come in; all those things."

That since the sale of the property to the defendants the plaintiff has been using the storage space to store oil for the operation of her stove; she has constructed a small building on the front of her property near the Columbia River highway, which is used as rental property; and has also constructed a grain storage bin to the rear of the property.

We are not concerned with the subsequent improvements for business purposes made by the plaintiff upon the rear of the property as it is clear from the testimony of all the parties that at the time of this transaction, in the minds of both the plaintiff and the defendants, the plaintiff's property was to be used solely for residential purposes. Neither does it appear from the evidence that the property in its then state, with the house so located, was adaptable for any other purpose.

Mr. Agsten, a witness for the plaintiff, testified that the road from the highway to the trailer court had grown from a path to a roadway since the "30's" and some rock and gravel had been placed thereon, and that he had used the road and driven from it to the rear of the property owned by the plaintiff on an occasion or two to deliver or pick up "something".

■ While the evidence hereinabove set forth is disputed, it appears that there was a defined roadway running from the Columbia River highway to serve the auto court and trailer camp, but there is no evidence of a defined roadway leading from the road in question to the rear of the plaintiff's premises; that at most motor approach to the rear of the plaintiff's home was a matter of convenience, there being sufficient space for at least a three-foot walkway at the west side of the house, and in no event does the evidence of reasonable necessity rise to a degree sufficient to carry the bur-

dens of a quasi easement sought to be placed upon the dominant estate in contradiction of the express warranty contained in plaintiff's deed.

For the above reasons the judgment of the trial court must be reversed and judgment entered for the defendant. Neither party shall recover costs in this court.

### On Petition for Rehearing

*Roger L. Dick* and *Dick & Dick,* of The Dalles, for the petition.

*William E. Dougherty,* of Portland, *Donald E. Heisler,* of The Dalles, and *Raymond M. Kell,* of Portland, contra.

Before Latourette, Chief Justice, Warner, Rossman, Lusk, Tooze and Perry, Justices.

### PERRY, J.

Plaintiff has petitioned for a rehearing in this matter.

■ The plaintiff's main contention is that the trial court on view of the premises observed a well-defined roadway leading to the rear of the plaintiff's property. This view of the property by the trial court was not in itself evidence, but was only for the purpose of giving the court a better understanding of the evidence to be offered.

The plaintiff, however, calls our attention to errors which should be corrected.

In paragraph 4 of the opinion we stated "The roadway in which the plaintiff seeks a perpetual easement appurtenant to her property runs generally in a north-

erly and southerly direction along the western boundary of the plaintiff's property * * *''. This should be "the eastern boundary of plaintiff's property."

In paragraph 5 of the opinion we stated "* * * Subsequent to the conveyance of the property to the defendants plaintiff constructed on the northerly portion of the property retained by her a small rental house, and to the rear of her home she constructed a grain storage bin.'' We should have stated that "to the rear of her home she constructed a building for storage."

We have carefully considered the petition for rehearing and are of the opinion that the conclusion reached in our original opinion is correct.

The petition for rehearing is, therefore, denied.