Argued and submitted June 13, reversed and remanded for entry of judgment confirming an easement over TL 905 for the benefit of TL902 and TL 1500; otherwise affirmed September 12, reconsideration allowed by order, designation of prevailing party and award of costs portion of the court's decision amended December 4, 1990

Jon and Deborah SCOTT,
*Respondents,*

*v.*

James and Alice CURTIS,
Tom Seal, and Terry Valentine,
*Appellants,*

Gary R. COLBY
and Charlotte L. Colby; and
James E. Paulson and Sandra Paulson,
*Intervenors-Appellants,*

*and*

Ken and Laura HOVERKAMP;
Kenneth Valentine; Robert and Patricia
Hoverkamp; and Carrie Carlson,
*Defendants.*

(87-6-6; CA A60251)

798 P2d 248

Ilene Nessenson-Pickard, Portland, argued the cause for appellants. With her on the briefs was Kennedy, Bowles & Towsley, Portland.

Richard Lee Barton, Portland, argued the cause for respondents. With him on the brief was Barton & Loennig, Portland.

WARREN, P. J.

## WARREN, P. J.

Appellants appeal the trial court's judgment quieting title to respondents' property, through which appellants assert there is an easement. On *de novo* review, we reverse.

Plaintiffs and all appellants are successors in interest to property that was owned at one time by Melvin and Elva Kathan. Plaintiffs own Tax Lot 905, through which the purported easement runs. Appellants are neighbors who assert ownership of the easement.

In 1962, the Kathans surveyed and platted the property for a subdivision that they called "Clackamas Estates." They did not record the plat, which numbered the lots differently from the current tax lot numbering scheme. In this opinion, we will refer to the lots by tax lot number. Much of the platted land borders on a branch of the Clackamas River. In the 1960's, Melvin Kathan made a picnic area along the bank of the river and improved an old logging road that led to it. The road crosses TL 905. Appellants argue that they have an easement over that road for access to the river, either by conveyance, by implication or by necessity. Respondents argue that there was never an easement or, if there was one, it has been extinguished.

Because the transactions that led to the parties' ownership interests are complex and the arguments for the appellants are not all exactly alike, we will discuss each theory for existence of the easement separately and will discuss each appellant's alleged interest separately to the extent necessary.

All of the appellants argue that they have an easement by conveyance. Respondents argue that any easement that may have been reserved across TL 905 was extinguished by the doctrine of merger of a land sale contract into a deed.

In 1969, the Kathans sold TL 905 and TL 902 on contract to Donald and Constance Mueller. The contract required that the Muellers "have and give access for purposes of ingress and egress over all existing roads bordering and through" the purchased land. That provision gave the Kathans access over TL 905 to property that they had retained along the Clackamas River, including the picnic area. The contract also granted river access privileges to the Muellers. In 1976, the Muellers paid off the 1969 contract, and

the Kathans issued a warranty deed to Constance Mueller.[1] The deed describes the property conveyed, but does not mention access over roads, river privileges or any other easement.

Appellants argue that the 1969 contract reserved for the Kathans, and therefore for the Kathans' successors in interest, an easement across TL 905 for access to the river. Plaintiffs argue that, under the doctrine of merger, the 1969 contract has merged in the 1976 deed, extinguishing the easement that the Kathans had reserved in the contract.

The application of the doctrine of merger has undergone some clarification since its adoption by the Supreme Court in *Winn v. Taylor,* 98 Or 556, 576, 190 P2d 342, 194 P 857 (1921). In *City of Bend v. Title & Trust Co.,* 134 Or 119, 129, 289 P 1044 (1930), the court said that rights under a contract are merged into a subsequent deed, except when "through fraud or relievable mistake the grantee has been induced to accept something different from what the contract required * * *." In such a case, the acceptance of the deed by the purchaser is not full performance of the contract. 134 Or at 129.

In *Jensen v. Miller,* 280 Or 225, 570 P2d 375 (1977), the court held that, because a survey error had caused a mutual mistake in the deed, the court would apply a provision for attorney fees that had existed in the contract but did not exist in the deed. Drawing on language of *City of Bend v. Title & Trust Co., supra,* the court said that "contractual provisions which are not embodied in the deed are superseded only if the parties *intended* to surrender them." *Jensen v. Miller, supra,* 280 Or at 231. (Emphasis in original.) Later, the court clarified that language, limiting the "intent of the parties" test to collateral terms in the contract, which are those that do not affect the title, possession, quantity or emblements of the land. *Soursby v. Hawkins,* 307 Or 79, 84, 763 P2d 725 (1988).[2]

 Appellants did not argue at trial and do not argue here

---

[1] Constance acquired Donald's interest in TL 902 and TL 905 in their 1970 divorce.

[2] Citing *Jensen v. Miller, supra,* the court said: "Collateral terms merge only to the extent that the parties intended the deed to be the final memorial of their bargain." 307 Or at 84. The inference is that the attorney fees provision in *Jensen* was a collateral term.

that the deed was not accepted as full performance of the contract or that there was mutual mistake or fraud. They argue that merger does not apply, because the parties did not intend the easement language to be superseded by the deed. That argument can succeed only as to collateral terms. An easement over land that is conveyed or reserved by deed affects the owner's title to that land and is not collateral to the subject matter of the deed. Appellants cannot rely on the "intent of the parties" test to avoid the effect of the merger doctrine. They have failed to prove an easement by grant or reservation in the sale of the property from the Kathans to the Muellers.

■ All appellants next argue that the easement was revived or recreated by a 1978 deed by which Constance Mueller transferred TL 905 to James Scott.[3] Language in the 1978 deed makes the transfer of TL 905 subject to agreements and stipulations in the recorded 1969 contract that described the disputed easement. The 1969 contract provides:

> "[T]he purchaser is to have and give access for purposes of ingress and egress over all existing roads bordering or through the described property. Also buyer agrees to abide by all existing easement rights regarding utility poles, water lines, etc. and is granted river privileges along the west branch of the Clackamas River bank on Lot 7 of the unrecorded plat of 'Clackamas Estates'."

Although the contract had merged into the deed and no longer had any effect for creating an easement, the language of the 1969 contract was adequate to describe an easement that Constance reserved in her 1978 conveyance of TL 905 to James Scott.[4] She could not revive the 1969 easement, but she was free to create a new one. She did that, albeit by reference to a contract of record which, by itself, had no legal effect. Because the 1969 contract was recorded, incorporation of its language in the 1978 conveyance made it possible for subsequent purchasers to discover readily what had been reserved.

When Constance reserved the easement over TL 905, she owned TL 902, which is adjacent to TL 905, and TL 1500,

---

[3] James Scott later sold TL 905 to plaintiffs, who are not related to him.

[4] Constance did not own the river front property; therefore, the language in the 1969 contract granting river privileges could have no effect.

which borders the side of TL 902 opposite TL 905. The easement was reserved for the benefit of those two parcels, which constituted the dominant estate. Constance did not expressly grant an easement across TL 905 for the benefit of the other appellants' properties, and we do not see in the language of the 1969 contract any grant.

Jon and Deborah Scott obtained TL 905 from James Scott by a deed that provides that it is subject to easements of record. Therefore, they took the property subject to the easement that had been created by Constance for the benefit of TL 902 and TL 1500.

■■ That easement has not been extinguished. Although the deeds conveying TL 902 and TL 1500, first to Stephen and Deborah Mueller and then to Kenneth and Terry Valentine, do not specifically refer to the easement, neither do they expressly exclude it from the conveyance. An easement appurtenant is presumed to be conveyed with the property to which it is appurtenant. *See Tusi v. Jacobsen,* 134 Or 505, 508, 293 P 587, 293 P 939 (1930). TL 905 is subject to an easement of ingress and egress in favor of Valentine.

■ The Paulsons, who own TL 1100, argue that they also have an easement across TL 905. In 1962, the Kathans conveyed TL 1100[5] by deed to their son Earl, who allegedly was in partnership with his father. The deed recognized all easements of record, including easements for ingress and egress. The disputed road easement was not of record at that time, and the general language used in the conveyance did not create an easement across TL 905 for river access.[6] Earl then deeded TL 1100 to the Muellers. The deed attempted to grant an easement over the disputed road through TL 905. However, Earl did not own TL 905 and so did not have a right to grant an easement through the property. He testified that he was in partnership with his father and so had an ownership interest in all of the Kathan land, including TL 905, when he sold TL 1100. There was no documentation of such an interest, either

---

[5] They also conveyed TL 1500 to him. Because TL 1500 was owned by Constance Mueller when she reserved an easement in her conveyance of TL 950 to James Scott, it is irrelevant that Earl Kathan attempted to create an easement when he transferred TL 1500 to the Muellers in 1975.

[6] Part of this deed is illegible.

by deed or by any other agreement. We hold that Earl Kathan's conveyance to the Muellers did not create an easement over the disputed road.

■ The Colbys assert an interest in the easement because of the deed by which they obtained TL 900. The Kathans sold TL 900 on contract to the Muellers in 1973. They issued a deed that granted certain easements, not including the one at issue here, to the Muellers in 1977. Donald Mueller obtained Constance's interest in the property and then transferred the lot by deed to the Colbys. The deed provided that the conveyance was "together with access over all existing roads in the unrecorded Plat of 'Clackamas Estates'." At the time Donald gave that deed to the Colbys, TL 905 was owned by Constance Mueller. Because Donald had no interest in TL 905, he could not create an easement over that property in favor of the Colbys.

The Curtises and Tom Seal assert an interest in the easement by virtue of their purported interests in TL 302 and TL 901,[7] which are on an island in the Clackamas River. In 1969, the Kathans sold TL 302 and TL 901 on contract to O. T. and Frances Seal. The contract provides that it is subject to a thirty-foot easement over the north portion of TL 905, which is a road easement unrelated to the road at issue here. Later conveyances of TL 302 and TL 901 either repeat that easement or fail to refer to any easement at all. Nothing in any contract, deed or assignment of this property even purports to create the easement at issue here. There is no easement created by conveyance for either of these properties.

■ Appellants next argue that they have acquired an easement by implication, apparently as successors to an easement that arose by implication in the conveyance of TL 905 from the Kathans to the Muellers. Whether such an easement exists depends on the intent of the parties, which is inferred from all of the circumstances under which the conveyance was made. *Jack v. Hunt,* 200 Or 263, 267, 264 P2d 461, 265 P2d 251 (1954). Some of the circumstances include the terms of the

---

[7] It is not at all clear what interest Seal has in the property. Seal at one time was the vendee of the property. The Curtises have acquired an assignment of the vendee's interest in the property and a deed for the vendor's interest.

conveyance, the extent of necessity of the easement, the existence of reciprocal benefits in the conveyance and the use of the land before the conveyance. 200 Or at 267-68.

When the easement was initially created by the 1969 contract, the Kathans had been regularly using the road to get to the river. After the contract was signed, Melvin Kathan and Donald Mueller improved both the road and the picnic area. Neighbors regularly used the road for a number of years. At some point in the early 1970's, after the Kathans moved away, the Muellers were divorced and Donald moved to another lot in the unrecorded plat, the road apparently was not kept up. One witness testified that, when he purchased property in the area in 1976, the disputed road was impassable by vehicle. In addition, during the 1970's, the river moved about 300 feet to the east, putting the picnic area away from the river and resulting in a lack of use of that area. There was also testimony that the inhabitants of the subdivision continued to use the road at least for foot access to the river for various recreational purposes.

■ Implied easements are not favored. *Dressler v. Isaacs,* 217 Or 586, 596, 343 P2d 714 (1959). Particularly in a case such as this, in which an easement existed in a contract and then was destroyed by deed, there is a heavy burden to overcome the presumption that the words of the deed express the intent of the parties. The circumstances at the time that the 1976 deed was signed were different from those existing in 1969, when the contract was signed. Especially in the light of the language in the deed that the conveyance is free of all encumbrances, we are not convinced that the parties intended to continue the easement that was created in 1969. Defendants have not proved an easement by implication.

■ Finally, the Curtises and Seal argue that they have a common law easement by necessity, because they do not have access to their island property through other means. When a tract conveyed by a grantor is separated from a highway by other lands of the grantor,[8] there may arise an implication in favor of the grantee of a way of necessity across the grantor's property. *Tucker v. Nuding,* 92 Or 319, 325, 180 P 903 (1919);

---

[8] The Kathans still had a vendors' interest in TL 905 when they conveyed TL 302 and 901.

*Hitchman v. Hudson,* 40 Or App 59, 594 P2d 851 (1979). The right only exists for as long as there is no other means of access to the public road. TL 302 and TL 901 are on an island that is located across the river from the old picnic area. Ordinarily, there is no right of way by necessity where property borders a public waterway. 92 Or at 326. However, if the land conveyed cannot be used effectively without crossing the purported easement to get to a public road, then the easement exists, unless the conveyance explicitly prohibits it. *State Highway Com'n v. Deal,* 191 Or 661, 681, 233 P2d 242 (1951). Neither Seal nor the Curtises testified. There was no evidence as to why it is necessary for them to use the disputed road to get from the island to a public road on the mainland. There is evidence that the disputed road has not been passable by vehicle for a number of years and is still a rough road and that the neighbors have not used motor vehicles over it for many years. The evidence suggests that successful alternatives have been found for ingress and egress for the island. There is no easement by necessity.

Reversed and remanded for entry of a judgment confirming an easement over TL 905 for the benefit of TL 902 and TL 1500; otherwise affirmed.