Argued and submitted January 29, reversed in part and otherwise affirmed on
appeal; affirmed on cross-appeal May 1, 1996

Geoffrey B. HAYWARD
and Mary T. Hayward, husband and wife;
Robert M. Courtney and Sharon Courtney,
husband and wife;
Don Courtney; Mary White;
Dan Edwards and Arlene Edwards,
husband and wife,
*Respondents,*

*and*

Raymond GOEBEL
and Donna Goebel, husband and wife;
John Dulin and Dorothy Dulin,
husband and wife; Grace Cherry;
Lee Bundy and Mary Bundy,
husband and wife,
*Respondents - Cross-Appellants,*

*v.*

Myrtle ELLSWORTH,
*Appellant - Cross-Respondent.*

(93-06-10454; CA A85997)

915 P2d 483

Richard L. Sadler argued the cause for appellant - cross-respondent. With him on the briefs was Copeland, Landye, Bennett and Wolf.

Mona K. Williams argued the cause and filed the briefs for respondents - cross-appellants.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

### RIGGS, P. J.

Defendant appeals from a judgment determining that certain plaintiffs have acquired prescriptive or implied easements to use a road crossing her property and permanently enjoining her from hindering their use of the road. Several plaintiffs cross-appeal, claiming that they too should have been granted easements to cross defendant's property. On appeal and on cross-appeal, we affirm in part and reverse in part.

The facts are not in dispute. Plaintiffs are lot owners in a subdivision that was developed by Maurice (Pat) and Kay McLain on a 20-acre parcel of land. The subdivision plat recorded by the McLains in 1969 shows the rectangular parcel divided into 20 one-acre lots. The plat also shows a 30-foot-wide street, designated Fir Street, traversing the eastern and northern boundaries of the subdivision, and a 30-foot-wide street, designated Granger Street, running along the western boundary of the subdivision. Finally, the plat calls for a 10-foot-wide easement for water and utilities running north to south through the center of the subdivision. It is the use of this easement that is at issue.

The McLains sold all of the lots in the subdivision between 1973 and 1984. The deeds executed between the McLains and the original purchasers all refer to the recorded plat. Some deeds specifically mention the existence of the utility easement, but none describes the easement as a means of ingress and egress to the lots. In 1974, when one lot owner started building a residence, Pat McLain constructed a road along the utility easement to facilitate the installation of electric, phone and water lines and to provide access to the subdivision lots. At that time, neither Fir nor Granger Street had been improved. Since its completion in 1975, the "center" road, as the utility easement has become known, has been used by plaintiffs for access to their properties. Only the southern portions of Fir and Granger Streets have been improved, and lot owners in the northern half of the subdivision do not have access to their properties along either of those roads.

In 1989 and 1992, defendant purchased from the McLains' successors in interest four lots at the southern end of the subdivision. The center road crosses two of defendant's lots, connecting to a county road on the southern edge of defendant's property.[1] After defendant purchased the property, she blocked access to the northern part of the subdivision by constructing a fence across the road. Plaintiffs brought this action seeking to establish an easement allowing them to cross defendant's property on the center road.

At trial, plaintiffs asserted that they had obtained easements by prescription and by implication to use the road for access to their property. At the close of plaintiffs' case and again at the end of trial, defendant moved for involuntary dismissal pursuant to ORCP 54 B(2) on the ground that plaintiffs had failed adequately to establish the existence of either type of easement. Those motions were denied. The court then determined that eight of the 15 plaintiffs had obtained prescriptive easements to cross defendant's property on the center road, and that plaintiffs Lee and Mary Bundy had acquired an easement by implication, as well.[2]

On appeal, defendant first argues that there is insufficient evidence to support the court's conclusion that eight plaintiffs acquired prescriptive easements to cross her property on the center road.[3] Plaintiffs respond that they have proved each element necessary to establish prescriptive easements. On *de novo* review, ORS 19.125(3), we conclude that none of the plaintiffs obtained a prescriptive easement to cross defendant's property.

■■ To acquire a prescriptive easement, plaintiffs must prove, by clear and convincing evidence, that they or their predecessors in interest used the center road to cross defendant's property in an open, notorious and adverse manner for

---

[1] The parties stipulated below that the center road crosses defendant's property "almost entirely" on lots 1 and 2.

[2] The court determined that plaintiffs Geoffrey and Mary Hayward, Robert and Sharon Courtney, Don Courtney and Mary White did not acquire implied or prescriptive easements to cross defendant's property. Those plaintiffs do not, by way of cross-assignment or cross-appeal, challenge that determination on appeal.

[3] Defendant separately assigns error to the court's denial of her ORCP 54 (B)(2) motions; however, our decision renders review of those rulings unnecessary.

a continuous period of 10 years. *Thompson v. Scott*, 270 Or 542, 546-47, 528 P2d 509 (1974). The parties do not dispute that plaintiffs' and their predecessors' use was open, notorious and continuous for the requisite period of time; therefore, the presumption arises that the use was adverse. *Feldman v. Knapp*, 196 Or 453, 250 P2d 92 (1952); *Stone v. Henry Enterprises, Inc.*, 95 Or App 355, 768 P2d 442 (1989). Defendant may rebut that presumption by showing that the use was permissive, or that plaintiffs and their predecessors were using an existing road in ways that did not interfere with her and her predecessors' use. *Woods v. Hart*, 254 Or 434, 458 P2d 945 (1969); *Feldman*, 196 Or at 471; *House v. Hager*, 130 Or App 646, 883 P2d 261, *rev den* 320 Or 492 (1994).

For the plaintiffs who, themselves or by way of their predecessors in interest, purchased lots before the road was completed in 1975, the presumption of adversity is rebutted by evidence that those lot owners had permission to use the road from defendant's predecessor in interest, the McLains. Plaintiffs correctly point out that the evidence does not conclusively establish that the McLains gave them or their predecessors *express* permission to use the road,[4] and that "mere acquiescence" is not enough to rebut the presumption of adversity. *Hanscam v. Sousa*, 56 Or App 117, 121, 641 P2d 86 (1982). However, plaintiffs overlook one important and distinguishing fact that undermines their claim of adversity: the McLains, not plaintiffs or their predecessors, constructed the road across the servient property. From that fact it can be easily inferred that plaintiffs' and their predecessors' use was the result of a "friendly arrangement" between neighbors—an inference that is further supported by Pat McLains' testimony that he constructed and maintained the road for the benefit of the subdivision residents. *See Woods*, 254 Or at 436 (strong inference of adverse use arises when party claiming easement actually constructed road through servient property without owner's permission).

The remaining plaintiffs or their predecessors in interest purchased their land after the center road had been

---

[4] Pat McLain testified that he knew that the lot owners were using the road for access to their properties, that access was one reason he constructed the road and that he never objected to the lot owners using the road in that manner.

constructed and merely took advantage of an existing way to reach their properties. There is no evidence that their use interfered with defendant's or her predecessors' use of the servient land. It is well settled that that type of use is not adverse and does not give rise to a prescriptive easement. *Woods*, 254 Or at 437-38; *House*, 130 Or App at 654-55; *Stone*, 95 Or App at 358; *Read v. Dokey*, 92 Or App 298, 758 P2d 399 (1978).

■　None of the plaintiffs has proved that the use of the center road was adverse; the fact that plaintiffs may have contributed to maintenance of the road does not convert their use into an adverse one. *Woods*, 254 Or at 436; *House*, 130 Or App at 655. Thus, defendant has sustained her burden of rebutting plaintiffs' evidence of adversity and the court erred in granting eight of the plaintiffs prescriptive easements to cross defendant's property on the center road.[5] We turn to defendant's remaining assignment of error, in which she contends that the court erred in granting an implied easement to plaintiffs Bundy. We also address the cross-appealing plaintiffs' argument that the court erred in not granting an implied easement to them.[6] We conclude that the court erred in granting an implied easement to Lee and Mary Bundy and did not err in denying implied easements to the other cross-appellants.

■　We have previously said that "[t]he essence of an easement by implication is that, when an interest in land is conveyed and the grant contains no express creation of an easement, one may be implied as an intended part of the transaction." *Smo v. Black*, 93 Or App 234, 238, 761 P2d 1339 (1988). The intent of the parties is inferred from the circumstances under which the conveyance was made, *Cheney v. Mueller*, 259 Or 108, 485 P2d 1218 (1971), and the party claiming the easement has the burden to prove its existence by clear and convincing evidence. *Jack v. Hunt*, 200 Or 263,

---

[5] Our decision renders unnecessary a discussion of the cross-appellants' first assignment of error.

[6] The group of cross-appellants includes plaintiffs Raymond and Donna Goebel, John and Dorothy Dullin and Grace Cherry. Although they were granted an implied easement below, plaintiffs Lee and Mary Bundy join in the cross-appeal. We address the implied easement claim with respect to those plaintiffs only.

264 P2d 461, 265 P2d 251 (1954); *Scott v. Curtis,* 103 Or App 389, 798 P2d 248 (1990).

■     Because the Bundys and the predecessor in interest to the Goebels purchased their lots from the McLains *before* the center road was constructed, the parties presumably could not have intended for the 10-foot corridor, marked on the plat as "an easement for water lines and utilities," to be used for access to the lots, as well. That inference is confirmed by the fact that the deeds executed at the time of the conveyance specifically refer to the recorded plat, which indicates that access to all of the lots in the subdivision is to be from Fir and Granger Streets.

Similarly, at the time the McLains conveyed lots to Cherry and the Dullins, they had already sold the two southern lots over which Cherry and the Dullins claim to have acquired an implied easement. Even if the parties had intended to create an easement to use the center road for ingress and egress to the properties, they could not have intended to create an easement over property that the McLains no longer owned. The evidence does not clearly or convincingly establish that any of the cross-appellants acquired an implied easement. The court erred in concluding otherwise as to plaintiffs Lee and Mary Bundy.

On appeal, reversed as to plaintiffs Lee and Mary Bundy, Dan and Arlene Edwards, Raymond and Donna Goebel and John and Dorothy Dullin; otherwise affirmed. Affirmed on cross-appeal.